OPINION. Van Fossan, Judge: The first question involves the propriety of respondent’s disallowance of a deduction claimed by petitioner in each of its fiscal years ended January 31,1948 and 1949, for depreciation or amortization of leasehold expense. The lease involved was executed on April 23, 1948, was for a term of 7 years 8 months from February 1,1947, and was subject to renewal for 2 additional terms of 10 years each. Therein petitioner, the lessee, agreed, inter alia, to expend $250,000 to improve the demised premises. In the event it did not expend the entire amount for such purposes, petitioner further agreed to pay as additional rental to the lessor at the expiration of the lease the difference between the $250,000 and the sum actually so expended. As of the date of the hearing herein,- no part of such amount had been paid. It is petitioner’s contention that its leasehold interest was acquired by it at a cost of $250,000 and that such cost is subject to being amortized over the original term of the lease. Respondent maintains that while petitioner may be liable to pay the sum of $250,000 over the term of the lease or at the expiration thereof, nevertheless it is not irrevocably bound to make the improvements called for in the lease. He argues that petitioner’s obligation under the lease was contingent and that, since the building contemplated therein had not been undertaken, nor any portion of the $250,000 paid, there is nothing that can be deducted. We see nothing contingent about petitioner’s obligation under the lease clause in controversy. True, petitioner was not unconditionally committed to make the improvements called for therein. But, should it choose not to do so or make improvements for which it' would expend less than the designated $250,000 it was nevertheless and absolutely bound to pay to the lessor as additional rental, at the expiration of the lease the full amount called for or the difference between such amount and that actually so expended. Thus, upon execution of the lease, petitioner’s obligation to its lessor to make the payment either in cash or in improvements or both became fixed both as to liability and amount although the specific time to make such expenditure was indefinite. This being true, such obligation was properly accruable on petitioner’s books of account, petitioner being on the accrual method of accounting. Moreover, for our purposes here, it makes no difference whether the accrued obligation be considered as the purchase price of the leasehold interest or as additional rental. In either event, it constituted consideration for the lease and, as such, an aliquot part is deductible each year in amortization or depreciation thereof. Regs. 111, sec. 29.23 (a) - 10. Cf. Oppenstein Brothers, 1 B. T. A. 259; John D. Fackler, 39 B. T. A. 395; Main & McKinney Bldg. Co. v. Commissioner, 113 F. 2d 81; Southwestern Hotel Co. v. Commissioner, 113 F. 2d 686. Respondent insists that even if petitioner’s commitment under the lease clause involved is not contingent, the addition of $250,000 to the other rent called for in the lease makes the over-all rental excessive and unreasonable due to the relationship of the lessor and the petitioner. The qualified identity of interests between the officers and stockholders of the lessor, the investment corporation, and the officers and stockholders of petitioner prevents the transaction in question from assuming an arm’s-length character in the ordinary sense of the term. Thus although a deduction for rent paid is not limited by the Internal Revenue Code of 1939, as in the case of salary or compensation, to a “reasonable allowance,” see Stanley Imerman, 7 T. C. 1030, under such circumstances as are here present a critical examination of all th'e evidence bearing upon the transaction involved, in the light of the situation known then to exist, is required to determine the true character of the item and to ascertain whether the rental arrangement was in fact sufficiently reasonable to achieve the same result as arm’s-length dealings. In this regard, the only direct evidence on the point, aside from the testimony of petitioner’s president, is the expert testimony of the real estate agent in Macon, a disinterested third party who assisted in the negotiations and who drafted those portions of the instrument in controversy. Such testimony was to the effect that the rent called for in the lease including the addition of the $250,000 was fair to all parties concerned, and, moreover, that all factors considered, it was a reasonable rent and in line with those paid for similar businesses in similar locations. Such testimony was not rebutted upon cross-examination, nor has respondent introduced any countervailing evidence. While the actions of a family corporation or family group should be carefully scrutinized, it is entirely conceivable that the relations each with the other, or their respective personalities, may be such that they will deal with each other strictly at arm’s length. In fact, it sometimes happens that their very nearness in blood leads them to be more independent in action than strangers in blood. We are constrained to hold upon the present record that the aggregate payment called for in petitioner’s lease with its related lessor is fair and reasonable and had the same result as arm’s-length negotiations between strangers. In view of what we have said above, we conclude that petitioner is entitled to a deduction in the fiscal years 1948 and 1949, respectively, for amortization of the $250,000 commitment assumed by it in 1948. Turning now to the period over which such amount is amortizable, it is petitioner’s contention that such period includes only the original lease term of 7 years 8 months without taking into account any right of renewal which it possessed. On the other hand, respondent maintains that the period over which the amortization should be spread consists not only of such original term but also of both renewal periods of 10 years each or an aggregate of 27 years 8 months. To bolster their respective positions, both parties cite and rely upon Regs. Ill, sec. 29.23 (a)-10, supra, the pertinent portions of which are set forth in the margin.[1] Viewing all of the facts as of the years in dispute and considering all inferences properly to be drawn therefrom, we are convinced that such facts show with a reasonable degree of certainty that petitioner could be expected to exercise its right of renewal at least for the first 10-year renewal period. Compare Hens & Kelly, Inc., 19 T. C. 305, with Bonwit Teller & Co. v. Commissioner, 53 F. 2d 381. Such is not true with respect to the second renewal of 10 years. Accordingly, we hold that the proper period over which the amortization in question should be spread is 17 years 8 months. Texarkana Cotton Oil Co., Inc., 1 B. T. A. 1142; Southern Amusement Co., Inc., 14 B. T. A. 300. There remains the question of whether petitioner is entitled to a claimed deduction for accrued accounting fees in the amount of $10,000 for the services of Samuel C. Cutler for the fiscal year ended January 31,1947. Respondent has disallowed $5,000 of the amount so claimed and as his reason therefor points to the fact that Cutler’s employment was terminated prior to his completing the tax work for such year. We agree with respondent that under such circumstances petitioner is not entitled to deduct the amount in controversy unless it be shown actually to have been paid. Petitioner’s evidence on the point is speculative and inconclusive and, in our opinion, does not establish that petitioner is entitled to the deduction sought. Consequently, as to this issue respondent is sustained. Decision will be entered under Bule 50. In cases in -which the lease contains an unexercised option of renewal, the matter of spreading such depreciation or amortization over the term of the original lease, together with the renewal period or periods, depends upon the facts in the particular case. As a general rule, unless the lease has been renewed or the facts show with reasonable certainty that the lease will be renewed, the cost or other basis of the lease or the cost of improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal. * * *